UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

CHARLENE A. FRANCISCO,

   Debtor.                                    No. 13-07-12810 SF


## MEMORANDUM OPINION IN SUPPORT OF ORDER DISMISSING CASE FOR FAILURE TO OBTAIN BUDGET AND CREDIT COUNSELING PRIOR TO DATE OF FILING OF PETITION

Nothing is simple.

That proposition is not surprising when applied to, say,

quantum electrodynamics[1]; it is more so when applied to

§109(h)(1)[2].  Nevertheless, a growing body of conflicting case

law discloses clearcut disagreements about the interpretation of

§109(h)(1) and what to do about perceived violations.

Section 109(h)(1)[3] provides in relevant part as follows:

> [A]n individual may not be a debtor under this title
> unless such individual has, <u>during the 180-day period
> preceding the date of filing of the petition</u>, received
> from an approved nonprofit budget and credit counseling
> agency described in section 111(a) an individual or
> group briefing (including a briefing conducted by

---

[1] <u>See, for example</u>, Richard P. Feynman, <u>QED: The Strange Theory of Light and Matter</u> (Princeton University Press 1985) (an entertaining exposition of the nature of matter and light and the interaction between them).

[2] Or not.  <u>In re Moore</u>, 359 B.R. 665, 668 (Bankr. M.D. Tenn. 2006).

[3] Unless otherwise indicated, all statutory references are to the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 23 ("BAPCPA").

Page 1 of  22

> telephone or on the Internet) that outlined the
> opportunities for available credit counseling and
> assisted such individual in performing a related budget
> analysis.

(Emphasis added.)

The facts are not in dispute. Debtor Charlene A. Francisco obtained the requisite counseling during a session which took place on November 7, 2007.[4] She then filed her petition that same day. The question, raised by the Court on its own,[5] is whether Debtor may continue her case or whether her petition must be dismissed or stricken. Debtor's counsel and the chapter 13 Trustee argued that the case could and should continue. No party appeared to argue otherwise[6], although it is apparent from

---

[4] Compare In re Enriquez, 07-13048-m7 slip op. at 1 (Bankr. D.N.M. 2008) doc 14 (Order Setting Aside Order to Show Cause Why Case Should Not be Dismissed for Failure to Obtain Budget and Credit Counseling Services and Debt Repayment Plan During the 180 Day Period Preceding the Petition Date), in which the debtor obtained the requisite counseling in October 2007 but received a certificate stating the counseling took place December 3, 2007 because it was not until that latter date that debtor paid the budget and credit counseling agency for the session (certificate – doc 7; minutes – doc 13). Compare also In re Warren, 339 B.R. 475, 477 (Bankr. E.D. Ark. 2006) (free counseling session occurred on October 27 but certificate not issued until November 15 when debtor paid the $30 certificate issuance fee; certificate was dated November 15 but correctly stated that counseling session occurred on October 27).

[5] Order to Show Cause Why Case Should Not Be Dismissed for Failure to Complete Credit Counseling Required Under 11 U.S.C. §109(h)(1) Within 180 Days Prior to Filing (doc 8).

[6] In a previous case the Court found itself sua sponte refusing to award prepetition attorney fees in the face of unanimous opposition from the chapter 13 trustee, debtor's attorney and others offering their views to the Court. The Court

Page 2 of  22

hearings in other cases that any number of attorneys and parties side with the Debtor and the Trustee.[7]  For the reasons set out below, the Court rules that the counseling session must be conducted[8] no later than the day before the petition is filed, and that the or case should be dismissed rather than the petition stricken.

**Analysis**

INTERPRETATION OF "DATE"

This dispute centers on the interpretation of the language "the 180-day period preceding the date of filing of the petition", and more specifically on the interpretation of the word "date".  There is a split of authority on the issue.

─────────────

"lost" on appeal.  In re Busetta-Silvia, 300 B.R. 543, on reconsideration 308 B.R. 537, rev'd, 314 B.R. 218 (10th Cir. BAP 2004).

[7] In cases in which an attorney represents the debtor and which are dismissed because the counseling does not take place within (whether before or after) the 180-day period, the Court has adopted the practice of requiring (if necessary) the attorney to reimburse the debtor for the filing fee and to assist the debtor at no charge in refiling the case (if the debtor chooses to use that attorney again), including filing any stay motion that may be required pursuant to §363(c)(3) or (4).  Certainly no order is required in this case.

[8] In Moore, 359 B.R. at 667, one of the debtors began her session on September 4 between 10:30 and 11:30 pm and concluded it on September 5 at 1:41 am, and filed her petition on the afternoon of September 5.  The court considered that the debtor had received her counseling the same day she filed her petition. That fact pattern does not present itself in this case and therefore the Court does not address it.

Page 3 of  22

One line of cases (the short one) consists of at least five decisions, two of them now rejected by their author, which hold that "date" means the day on which the petition is filed, and the counseling session must occur within the 180 days immediately preceding the day that the petition is filed.  In re Mills, 341 B.R. 106 (Bankr. D. Dist. Col. 2006); In re Murphy, 342 B.R. 671 (Bankr. D. Dist. Col. 2006); In re Cole, 347 B.R. 70 (Bankr. E.D. Tenn. 2006); In re Gossett, 369 B.R. 361 (Bankr. N.D. Ill. 2007); and In re Silva, 2007 WL 3232556 (Bankr. D.N.M. 2007).  In In re Barbaran, 365 B.R. 333 (D.Dist. Col. 2007), Judge Teel reconsidered the conclusions he reached in the Mills (and by extension the Murphy) cases; nevertheless, those cases are still extant.  The focus of the decision in Silva was on the bankruptcy petition preparer more than on the timing as such of the counseling, and so that decision provides little useful guidance on the interpretation of "date".

The Cole court, relying in part on the Mills and Murphy cases and especially on Black's Law Dictionary and the bankruptcy rules, found that the language of the statute was clear and in particular that the word "date" meant a day rather than a time. 347 B.R. at 73-76.  That court also examined the legislative history of the debtor education provisions, saying that Congress' intention of having debtors informed of their options and then providing some time for them to think about the options before

Page 4 of  22

filing would be thwarted by permitting debtors to file petitions the same day as they received the counseling. Id. at 76-77.

In Gossett, the court focused particularly on the instructions in Rule 9006 F.R.B.P. for measuring time. 369 B.R. at 368-71; cf. Cole, 347 B.R. at 76 (analogizing to Rule 9006). The Gossett court pointed out that the bankruptcy rules govern the practice and procedure in cases under Title 11 and must be followed unless inconsistent with the Code, citing 28 U.S.C. §2075 and United New Mexico Bank v. Wilferth (In re Wilferth), 57 B.R. 693, 694 (Bankr. D.N.M. 1986). Id. at 369. Rule 9006(a), which sets out the method of calculating any period of time prescribed or allowed by the statute, 10 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶9006.04 at 9006.10 (15th ed. Rev. 2007), provides in relevant part as follows:

> In computing any period of time prescribed or allowed
> by these rules, by the local rules, by order of court,
> or by any applicable statute, the day of the act,
> event, or default from which the designated period of
> time begins to run shall not be included.

In fact the use of Rule 9006(a) is more of an analogy than a direct application, since fundamentally Rule 9006(a) applies to the proceedings within a title 11 case once it has been commenced rather than to determining when such a case will begin. Moore, 359 B.R. at 675 (citing Martin v. First National Bank of Louisville (In re Butcher), 829 F.2d 596, 601 (6th Cir. 1987),

Page 5 of   22

abrogated on other grounds Bartlik v. U.S. Dept. of Labor, 62
F.3d 163 (6th Cir. 1995)).

The other line of cases comes to the opposite conclusion.
These other cases all rule, explicitly or implicitly, that the
term "date" is ambiguous and can be interpreted as the time that
an action takes place rather than merely the day.  In re Warren,
339 B.R. at 479-480; In re Spears, 355 B.R. 116 (Bankr. E.D. Wis.
2006); In re Toccaline, 2006 WL 2081517 (Bankr. D. Conn. 2006);
In re Hudson, 352 B.R. 391, 393-94, 396 (Bankr. D. Md. 2006); In
re Moore, 359 B.R. at 671-72; In re Swanson, 2006 WL 3782906
(Bankr. D. Idaho 2006); and In re Barbaran.  The rationales these
court use in coming to the opposite conclusion are not at all
unreasonable.  It is just that this Court, respectfully, does not
find them persuasive.

First, while "date" is used in many ways in the English
language[9], reference to a dictionary suggests that the day
something happens rather than the time fits the concept of the
statute more closely.  Perhaps the best example of that is the
quotation of Black's Law Dictionary (8th ed. 2004) in Moore, 359
B.R. at 671, which states:

> date.  1. The day when an event happened or will happen
> <date of trial>. 2. A period of time in general <at a

---

[9] Debtor's counsel made clear the statute did not refer to
an oblong fleshy fruit enclosing a hard seed, and counsel also
agreed with the Court that the statute was not referring to a
romantic engagement.

Case 07-12810-s13   Doc 34   Filed 01/25/08   Entered 01/25/08 14:32:30 Page 6 of 22

later date>. 3. An appointment at a specified time <no dates are available>.

Although the Moore court concluded that either the first or the third definition could fit the statute, id. at 371, this Court finds that the first definition fits the statute in a more commonsense manner. Compare Hudson, 352 B.R. at 393 (suggesting "date" more commonly means a day rather than a time). It seems to this Court that the notion of an "appointment" (a certain time on a certain date) does not hew as closely to the purpose of the statute as does the notion of the day on which an event did happen or will happen (the filing of the petition).

Second, several of these cases survey the use of the word "date" in other parts of the Code with the interpretive maxim in mind that a term should have the same meaning in one section of the Code as in all the others. Hudson, 352 B.R. at 393-94; Moore, 359 B.R. at 672; and Barbaran, 365 B.R. at 335-37. An elaboration of that rule – that the same term must have the same meaning everywhere in the Code - is that administration of the Code requires a "bright line" test for the date of the filing of the petition, since the "bright line" marks the precise moment when, among other things, certain protections begin for the debtor. In other words, in the context of when the automatic stay begins, for example, the exact time of the filing of the petition is required rather than merely the day. And because the "date" of the filing requires that precision in other parts of

the statute, the term "date" must be similarly circumscribed in connection with the deadline for the credit and budget counseling. <u>Warren</u>, 339 B.R. at 480; <u>Spears</u>, 355 B.R. at 118-19; and <u>Hudson</u>, 352 B.R. at 395.

To begin with, "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation...." <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249, 253 (1992). Thus a court need not rigorously adhere to a certain interpretive maxim if it does not make sense otherwise.

Further, decisions from the Supreme Court have not uniformly followed the rule of statutory construction that a term must have the same definition throughout the statute; <u>e.g.</u>, <u>Dewsnup v. Timm</u>, 502 U.S. 410, 417 n. 3 ("[W]e express no opinion as to whether the words [at issue] have different meaning in other provisions of the Bankruptcy Code."), quoted disapprovingly by Mr. Justice Scalia in his concurrence in <u>Patterson v. Shumate</u>, 504 U.S. 753, 766-67 (1992). "Statutory construction, however, is a holistic endeavor." <u>United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 371 (1988).[10] The meaning of a term may be clarified by the remainder of the statutory scheme, <u>id.</u>, or in this case, by looking at the various contexts in which the term appears and the

---

[10] All the decisions listed in this opinion take the "holistic" approach, albeit with opposing results.

Page 8 of 22

uses to which the term is put.  So, for example, when calculating

preference periods under §547(b)(4)(A) ("on or within 90 days

before the date of the filing of the petition"), courts use the

day rather than the time in making those decisions.  E.g.,

Barnhill v. Johnson, 503 U.S. 393 (1992) (time of preferential

transfer when payment is by check).

> The plainness or ambiguity of statutory language is
> determined by reference to the language itself, the
> specific context in which that language is used, and
> the broader context of the statute as a whole.  It is a
> fundamental canon of statutory construction that the
> words of a statute must be read in their context and
> with a view to their place in the overall statutory
> scheme.  A court must therefore interpret the statute
> as a symmetrical and coherent regulatory scheme, and
> fit, if possible, all parts into an harmonious whole.

Moore, 359 B.R. at 670-71.  (Internal punctuation and citations

omitted.)  Barbaran, 365 B.R. at 336-38, illustrates well how the

term "date" is not used exactly the same way throughout the Code,

but instead is interpreted in a way that makes sense to do so in

each context.  Id. at 337.[11]

Nevertheless, interpreting §109(h)(1) to refer to a day

rather than a time within a day certainly provides a bright-line

test for anyone that wants it.  It means that the counseling must

take place before midnight of the day of the filing.  This

answers the argument that because the issue addressed by the

---

[11] It is ironic, but surely a tribute to the authors of
these various opinions, that this Court's decision is based in
good part on the reasoning in the cases that reach the opposite
conclusion.

statute was not time per se but a deadline (for determining eligibility), it makes sense to use the meaning of "date" that provides for a precise moment (a time) by which to measure compliance. Hudson, 352 B.R. at 395-96, cited by Moore, 359 B.R. at 671.

It is true that interpreting the statute this way could lead to an odd result; for example, a debtor could, through the wonders of the internet and CM/ECF, complete the counseling session at 11.59 p.m. and file a petition two minutes later at 12.01 a.m. See Hudson, 352 B.R. at 396. That scenario would not leave much time for a debtor to contemplate the consequences of filing a bankruptcy petition, a result which does seem somewhat at odds with what Congress professed its purpose to be in this portion of BAPCPA:

> Congress's goal seems to be to discourage the practice
> of hastily filing for bankruptcy, even if that be in
> the face of foreclosure, repossession, or garnishment,
> and to discourage debtors from deferring their first
> consideration of bankruptcy until the very eve of such
> decisive events in the exercise of creditors'
> remedies....

In re Toccaline, 2006 WL 2081517 at *3 (refusing to find exigent circumstances).

The Spears court suggests that a debtor does not necessarily need much time to think about whether to file once the counseling session is completed. 355 B.R. at 119. The Swanson court concurs. 2006 WL 3782906 *2. These courts make a good point:

Page 10 of 22

any number of debtors will be able to decide quickly or at least
within hours about whether to file, and making these debtors wait
until the next day may have no impact at all on their decision.
The consequence of this approach is that debtors who are able to
make up their minds quickly should be allowed to file right away
(while presumably those who need to think about it more can and
should wait before filing).  This is admittedly an eminently
reasonable approach.  And there is nothing in the legislative
history which counsels against this approach as such.[12] What the

_____

[12] _Cole_ quotes that history as follows:
    "Noting that due to the increase in bankruptcy filings over
the past several years, 'there is a growing perception that
bankruptcy relief may be too readily available and is sometimes
used as a first resort,' H.R. Rep. No. 109-31(1) (2005),
reprinted in 2005 U.S.C.C.A.N. 88, 90, Congress sought 'to
improve bankruptcy law and practice by restoring personal
responsibility and integrity in the bankruptcy system and ensure
that the system is fair for both debtors and creditors.' H.R.
Rep. No. 109-31(1) (2005), reprinted in 2005 U.S.C.C.A.N. 88, 89.
    "One method implemented by which to achieve this purpose is
the counseling requirement. As stated in the House Report of the
Judiciary Committee dated April 8, 2005, BAPCPA 'requires debtors
to receive credit counseling before they can be eligible for
bankruptcy relief so that they will make an informed choice about
bankruptcy, its alternatives, and consequences.' H.R.Rep. No.
109-31(1) (2005), reprinted in 2005 U.S.C.C.A.N. 88, 89.
    "Discussed under the subtitle "Consumer Creditor Bankruptcy
Protections," the Judiciary Committee Report states the following
with respect to the pre-petition counseling requirement:
        Most importantly, S. 256 requires debtors to
        participate in credit counseling programs before filing
        for bankruptcy relief (unless special circumstances do
        not permit such participation). The legislation's
        credit counseling provisions are intended to give
        consumers in financial distress an opportunity to learn
        about the consequences of bankruptcy-such as the
        potentially devastating effect it can have on their
        credit rating-before they decide to file for bankruptcy

Page 11 of  22

legislative history makes clear is only that Congress did want every debtor to think about the consequences of filing before doing so.[13]

On the other hand, Congress could have simply deleted the words "the date of" from the statute, so it read "within the 180-day period preceding the filing of the petition...."  Congress knew how to write such clear language, as demonstrated by §362(a): "[A] petition filed ... operates as a stay...."  Of course, the nature of this exercise is that courts and parties deal with the statute as written and not as they wish it were written, but it is of some import that the statute could have been written much more clearly if Congress had not intended for there to be any waiting period.  See, e.g., Ali v. Federal Bureau of Prisons, 2008 WL 169359 *7 (U.S. January 22, 2008):

> Had Congress intended to limit §2680(c)'s reach as
> petitioner contends, it easily could have written "any
> other law enforcement officer acting in a customs or
> excise capacity."  Instead, it used the unmodified,

relief.
H.R.Rep. No. 109-31(1) (2005), reprinted in 2005 U.S.C.C.A.N. 88, 104."  (Citations omitted.)

[13] The Cole court finds support, by implication, in the legislative history for requiring debtors to wait until the next day before filing a petition.  347 B.R. at 76-77. However, most of the cases agree that while the legislative history makes clear that Congress wanted debtors to think before filing a petition, it said nothing specific one way or the other about a waiting period.  Warren, 339 B.R. at 480; Spears, 355 B.R. at 119; Moore, 359 B.R. at 673; Swanson, 2006 WL 3782906 *2; see Barbaran, 365 B.R. at 338 (nothing in the legislative history suggests Congress intended "date" to mean a calendar day).

> all-encompassing phrase "any other law enforcement officer."

(Emphasis in original.)

And in any event merely because the statute as written might not accomplish the Congressional goal as well as if it were written another way (say, by explicitly requiring a 24-hour waiting period) does not mean the statute is unworkable or should not be interpreted as written. <u>E.g.</u>, <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004) (apparent drafting error that did not allow chapter 7 debtor's attorney to be compensated from estate, unless the attorney is employed by the trustee, was part of statute and therefore was to be enforced). <u>Lamie</u> illustrates the application of the rule that "courts must presume that a legislature says in a statute what it means and means in a statute what is says there." <u>Connecticut National Bank v. Germain</u>, 503 U.S. at 253-54, citing <u>Ron Pair Enterprises</u>, 489 U.S. at 241-42.

In this case there is an additional consideration. In reality, and to be fair to Congress, it is too much to expect Congress to legislate with complete precision in every instance.[14] As anyone knows who has tried drafting legislation or even just rules, perfectly clear language that achieves a

---

[14] In saying this, the Court is aware that various Supreme Court cases seem to impose precisely that exacting standard on Congress; <u>e.g.</u>, <u>Ron Pair Enterprises</u>, 489 U.S. at 241-42 (placement of comma important determinant of meaning of §506(a)).

Case 07-12810-s13    Doc 34    Filed 01/25/08    Entered 01/25/08 14:32:30 Page 13 of 22

targeted result can be quite difficult even on supposedly simple matters. For example, even portions of the Code enacted in 1978 as a product of careful and systematic analysis and debate contained ambiguities that had to be amended. Compare 11 U.S.C. §546(a) (1978) with §546(a) (as amended 1994) (clarifying deadlines for filing avoidance actions) and 11 U.S.C. §550 (1978) with §550(c) (as amended 1994) (limiting preference recoveries against insiders in order to overrule cases such as Levit v. Ingersoll Rand Financial Corp. (In re V.N. DePrizio Construction Co.), 874 F.2d 1186 (7th Cir. 1989) and Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Brothers Drilling), 892 F.2d 850 (10th Cir. 1989)). Thus, it is not surprising that the same words in a statute might result in slightly different effects depending on what the context of the words are. In this instance, the Court interprets the statute the way it is written but at the same time in the context of the statute (i.e., holistically) and in a commonsense manner. See Barbaran, 365 B.R. at 337 ("[R]eferences in the Bankruptcy Code to the phrase 'before the date of filing of the petition' that refer to a calendar date, such as the reference in §547(b)(4)(A), are interpreted in that manner because it makes sense to do so.").

For the foregoing reasons, the Court concludes that a debtor must obtain the budget and credit counseling prior to the date – day – of the filing of the petition.

Case 07-12810-s13   Doc 34   Filed 01/25/08   Entered 01/25/08 14:32:30 Page 14 of 22

DISMISSING THE CASE OR STRIKING THE PETITION

Debtor argues that the Court, having decided that this case must be terminated, should strike the petition rather than dismiss the case. The statute does not explicitly mandate either dismissal or striking. In consequence, the arguments for one or the other arise by implication and policy. Debtor's argument is twofold. First, the statute deals with eligibility to be a debtor ("§109. Who may be a debtor"; "[A]n individual may not be a debtor under this title...."). These provisions are to be distinguished from those in, say, §521(a), which call for the dismissal of the case because the debtor fails to do certain things after the petition has been (legitimately) filed. Second, BAPCPA has mandated consequences of dismissal that are now so much more severe that striking the petition is more appropriate, in particular deprivation of stay relief upon filing a subsequent petition after a dismissal. §362(c)(3) and (4). Despite counsel's tempting arguments, however, the Court finds that dismissal is the proper remedy.

The argument for striking is presented in the most detail in two carefully reasoned decisions.[15] <u>In re Thompson</u>, 344 B.R. 899 (Bankr. S.D. Ind. 2006), <u>aff'd</u> by the District Court, <u>appeal</u>

---

[15] There are literally dozens of decisions on this issue. One court, as of almost two years ago (March 6, 2006), had found 34 (of which 31 favored dismissal). <u>In re Seaman</u>, 340 B.R. 698, 706 n. 3 (Bankr. E.D.N.Y. 2006).

Case 07-12810-s13   Doc 34   Filed 01/25/08   Entered 01/25/08 14:32:30 Page 15 of 22

<u>vacated as moot</u>, 2997 WL 2859795 (7th Cir. 2007), and <u>In re</u>
<u>Elmendorf</u>, 345 B.R. 486 (Bankr. S.D.N.Y. 2006).

<u>Thompson</u>, 344 B.R. at 904-05, emphasizes the exact wording
of the statute as the starting premise for an extended syllogism;
<u>to wit</u>: §109(h)(1) says an "uncounseled" debtor (this Court's
shorthand) "may not be a debtor"; a petition that successfully
initiates a case may only be filed by "an entity that may be a
debtor", §§301 and 302; therefore an "uncounseled" debtor may not
file a petition that successfully initiates a case and thus the
petition should be stricken.

As attractive as syllogisms are to courts and lawyers, they
are not always applicable. As the Court has already stated,
Congress has not crafted the statute with that much semantic
precision. There is certainly no evidence that Congress located
the counseling requirement in §109 for any more subtle reason
than it was a convenient place to put it. An example of this
semantic imprecision from BAPCPA is Congress's use of the term
"waiver" in §109(h)(3) to describe a process whereby a debtor can
"defer" but not avoid obtaining the counseling. In that sense
the attribution by these courts of a specific significance to the
"may not be a debtor" language brings to mind the classical
practice of examining animal entrails for guidance; it's just not
there. This Court concedes that it must attribute significance

Case 07-12810-s13    Doc 34    Filed 01/25/08    Entered 01/25/08 14:32:30 Page 16 of 22

to the "may not be a debtor" language, but it does so by
dismissing the case.

Related to that argument is that the words "entity that may
be a debtor" have been in the statute from the outset. Those
words referred to, for example, a railroad that may not file a
chapter 7 petition or an insurance company that may not file a
petition at all. §§ 109(b)(1)-(3) and (d). Thus there is a
usage for that language that predates the enactment of §109(h)(1)
and does not mandate striking the petition for a violation of
§109(h)(1).

When Congress passed BAPCPA, it was legislating against a
background of (1) cases under various chapters dismissed for
ineligibility pursuant to §109, <u>Seaman</u>, 340 B.R. at 701-02, and
(2) cases not found void <u>ab initio</u> for violations of §109(g);
<u>e.g.</u>, <u>In re Flores</u>, 291 B.R. 44 (Bankr. S.D.N.Y. 2003). Congress
is presumed to be aware of how a statute is interpreted when it
amends a statute. <u>Lorillard v. Pons</u>, 434 U.S. 575, 581 (1978).
One could reasonably expect that if Congress intended a result
for cases filed by uncounseled debtors other than dismissal, when
dismissal has been the norm, it would have provided so more
clearly in the text of the statute or at least in the legislative
history. See <u>Timbers of Inwood</u>, 484 U.S. at 379.

<u>In re Rios</u>, 336 B.R. 177, 180 (Bankr. S.D. N.Y. 2005),
argues that Congress surely did not mean to deprive various

Case 07-12810-s13   Doc 34   Filed 01/25/08   Entered 01/25/08 14:32:30 Page 17 of 22

debtors of the protections of the bankruptcy code simply for
failure to obtain the counseling.  In fact, as the legislative
history quoted above makes clear, one of Congress' stated
intentions was to reduce the number of filings.  And various
provisions of BAPCPA that challenge the integrity of debtors[16]
and their counsel[17] (but of no other parties in interest), that
encourage debtors not to hire counsel[18], that increase the filing
burdens for debtors and set time limits that lead to automatic
dismissal of their cases[19] (perhaps without even allowing a court
to grant the debtor an extension of time[20]), and other
provisions, belie any notion that Congress wrote BAPCPA to
benefit debtors.  In short, a swift loss by non-conforming

---

[16] §342(b) (warning to debtors not to commit fraud); 28
U.S.C. §586(f) (debtor audits).

[17] §526(c)(2) (specification of liability of debtor's
counsel).

[18] §527(b) (Attorney required to deliver written statement
to potential debtor that "[a]lthough bankruptcy can be complex,
many cases are routine."").  The use of the word "routine" is
accurate but misleading to the extent it connotes the concept of
"simple"; for example, electing exemptions is a routine part of
every consumer bankruptcy but one that almost certainly requires
legal advice and analysis.

[19] §521(a) and (i)(1) (automatic dismissal after 45 days if
§521(a) information not timely filed).

[20] §521(i)(1) and (3) (subsection (3) permits debtor to
request extension of time but subsection (1) does not authorize
court to grant the request).

Case 07-12810-s13    Doc 34    Filed 01/25/08    Entered 01/25/08 14:32:30 Page 18 of 22

debtors of their bankruptcy rights is exactly what BAPCPA contemplates or even encourages.

Debtor also correctly argues that BAPCPA has made more dire the potential consequences of dismissal. Specifically, §§362(c)(3) and (4) make the stay not so "automatic" for refiling debtors. First, the evidence (admittedly anecdotal) is that debtors have had relatively little difficulty in extending the stay, and that creditors have largely greeted their new leverage with complete indifference. More important, the fact that the consequences of a dismissal are potentially more dire does not by itself warrant a change in what leads to dismissals. The Court understands that Debtor's argument is slightly different; namely, that the Court should re-examine the issue of dismissal in order to "get it right" now that the impact of dismissal is serious enough to incentivize debtors to raise the issue. The Court has done that, and still concludes that dismissal of the case is the required disposition.

The most comprehensive argument for dismissal is set out in Seaman, 340 B.R. 698. It is also the most persuasive case on the issue. A number of other cases discuss the issue and come to the same conclusion. In re Ross, 338 B.R. 134 (Bankr. N.D. Ga. 2006); In re Tomco, 339 B.R. 145 (Bankr. W.D. Pa. 2006); In re Racette, 343 B.R. 200 (Bankr. E.D. Wis. 2006); Gossett, 369 B.R. 361; In re Cannon, 376 B.R. 847 (Bankr. M.D. Tenn. 2006).

_Seaman_ not only cites several categories of cases paralleling this 109(h)(1) case which result in dismissals rather than strikings, 340 B.R. 701-03 and 707-08. It also points out that §109 is not jurisdictional, citing _Tomco_, 339 B.R. at 159-160 (jurisdiction derives from 28 U.S.C. §1334) and therefore filing a petition commences a case that is not a nullity and that remains open until the court makes a decision on the debtor's eligibility. _Seaman_ also illustrates the practical and legal utility of dismissal as the disposition. 340 B.R. 707. It cites the legislative history and the purpose of the statute to argue that Congress could not have intended that a non-compliant debtor be able to escape the consequences of a dismissed case as expressed in §362(c)(3) and (4). 340 B.R. at 708-09. And it points out that striking the petition may not do a debtor any favors if in the meantime the creditor has repossessed the collateral because of a "void" filing. 340 B.R. at 709.[21] Finally, in response to courts that have been concerned about serial filings, Congress addressed the problem partially by means of §§362(c)(3) and (4). In any event, courts have always had ample authority to deal with serial filers attempting to, among

---

[21] _Thompson_, 344 B.R. at 906-08, argues that the automatic stay is effective even in cases in which the petition is stricken due to §109(h)(1) ineligibility.

Case 07-12810-s13   Doc 34   Filed 01/25/08   Entered 01/25/08 14:32:30 Page 20 of 22

other things, get the automatic stay repeatedly imposed to protect some property.[22]  Id.

**Conclusion (and Epilogue)**

For the foregoing reasons, the Court finds that Debtor did not obtain the budget and credit counseling within the time specified by §109(h)(1), and that the case must therefore be dismissed.

As is apparent, this is a case that could and likely would have gone on to confirmation and perhaps consummation and closing if the Court on its own motion had not raised the issue of the timing of the budget and credit counseling.  The Court did that for two reasons: concern to adhere to the words of the statute, at least as the Court reads those words, and concern that a debtor immediately or years later might find a creditor collecting a debt on the basis that Debtor was never discharged in this case.  Compare Hudson, 352 B.R. at 392 (creditor unknowingly conducted foreclosure sale on date of filing of petition and argued for dismissal of the case) and Gossett, 369 B.R. at 364-65 (creditor repossessed vehicle allegedly not knowing about the automatic stay and, after attempts to return the vehicle to debtor were met with a motion for sanctions, filed

---

[22] One approach this Court has used is to not dismiss such a petition but to grant stay relief, and then keep the case open until the stay relief is fully effective, thereby at least hindering the abusive debtor from filing another case.

Page 21 of  22

motions to annul the stay and to dismiss the case). Indeed the latter concern is at least part of the reason that the Bankruptcy Court for the District of New Mexico notifies debtors when they risk automatic dismissal under §521(i) and, where automatic dismissal occurs, issues and serves on all parties in interest an order explicitly saying that.

In light of rulings by other courts, perhaps both concerns are exaggerated, and in fact this Court would welcome a review of this decision by the Tenth Circuit Bankruptcy Appellate Panel. The Court certainly would be pleased if an appellate ruling said that a counseling session conducted on the date of the filing met the requirements of §109(h)(1), or that the issue need not even be considered if no party in interest moves to dismiss the case. Nevertheless, the Court considers that its duty to uphold the laws of the United States as written requires the conclusions reached in this memorandum opinion. The Court will therefore enter an order dismissing this case without prejudice to a refiling at any time.

_____
James S. Starzynski
United States Bankruptcy Judge

date entered on docket: January 25, 2008

COPY TO:

Gerald R Velarde
2531 Wyoming Blvd NE
Albuquerque, NM 87112-1027

U.S. Trustee
United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Trustee
Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111